## Tatham *versus* Lewis.

65 . 20
134  645

1. Tatham and Waite executed a lease of Waite's land, it was left with Waite for his wife's acknowledgment which she declined. *Held*, that Tatham was not bound to accept nor Waite to deliver it.

2. When his wife refused, Waite had a right to destroy the lease.

3. Lewis and Tatham had been in negotiation to embark together in the purchase of mining rights; Lewis afterwards bought the land for which Waite had executed the lease to Tatham; the master found that it was not the understanding that Lewis's operations should be for the joint interest of himself and Tatham. *Held*, there being no confidential relation between them, Lewis, by notice of the inoperative lease of Waite, could not be affected with an equity for Tatham.

4. Waite after the sale to Lewis destroyed the lease; that would not have destroyed the term had the lease been valid.

5. Tatham could have compelled Waite to execute another, and if Lewis had been affected with notice of its existence, he could have been compelled to confirm it.

6. Wilson was attorney for Tathams and knew of the lease; he was afterwards attorney for Lewis in the purchase of the land, but gave him no notice of the lease. The extent of Wilson's liability to Tathams would have been the cost of a proceeding to establish the lease.

7. If Tathams had sustained any injury through the negligence of Wilson, a bill in equity could not be sustained; they had a remedy at law.

8. Tathams filed a bill against Lewis and Wilson which was dismissed, but there being some warrant for the bill, there were no costs.

February 17th, 18th and 19th 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from Nisi Prius: In Equity: No. 30, to January Term 1865.

The bill in this case was filed, December 30th 1864, by George N. Tatham, Henry B. Tatham and William P. Tatham, against George T. Lewis and Andrew P. Wilson, and Andrew M. Jones and others, administrators, &c., of William J. Taylor, deceased.

The bill alleged that in 1859 Taylor, who was a professor of mineralogy, gave the plaintiffs information of a deposit of zinc on a farm in Blair county, Pennsylvania, called the Dickson or Waite farm, in consideration of which Taylor was to participate in any profit received by the plaintiffs. Early in 1860 the plaintiffs, having retained Wilson, who was a lawyer residing in Huntingdon, as their counsel, visited Sinking Valley, in which the farm was situated, and as a result, determined to purchase mining leases in the Valley. In the fall of the same year Henry B. Tatham, Wilson and Taylor again visited the Valley, and obtained several mining leases in the names of Henry B. Tatham (representing the plaintiffs) and Taylor. Under Wilson's instructions the wives of the lessors joined in the leases, and a number of blank leases, signed by Taylor and Tatham, were left with Wilson, with instructions to him to secure as many as he could. In 1862 Taylor, finding it inconvenient to bear the expense, requested H. B.

15 P. F. SMITH—5

[Tatham *v.* Lewis.]

Tatham to procure a purchaser for his interest, and negotiations were entered into with one Manning in New York, which were not successful. In 1863 G. N. Tatham and Taylor, with Wilson as their counsel, again visited the Valley to procure a lease from Waite, as well as leases from other persons. Several leases were obtained, and after Wilson and Taylor had returned home, Tatham obtained a lease in duplicate from Waite, duly executed and acknowledged by him; Waite took the lease to procure his wife's signature, promising to send it to Wilson; it was not executed by the wife. The next day Tatham informed Wilson of these facts, and in June informed Taylor also, who repeated his wish to sell out his interest. At this point H. B. Tatham invited Lewis to purchase Taylor's interest, telling him of the locality of zinc, having previously informed him of the discovery. At Lewis's request H. B. Tatham procured him an interview with Taylor, when it was arranged that Lewis, Taylor and Dr. Mucklé, then in the employment of Lewis, should visit the Valley, Wilson to accompany them. Lewis had been informed of the incomplete lease from Waite, and it was agreed that the entire operation should be for the joint account of Taylor, Lewis and the plaintiffs. Lewis knew that Wilson had been retained as Tatham's attorney. In July 1863 Lewis, Taylor and Wilson visited the Valley. In August, Wilson procured an agreement from Waite to sell his farm for $10,000, and afterwards obtained a deed for it to Lewis, representing that he was acting for the plaintiffs, Taylor and Lewis. Wilson then instructed Waite to destroy the lease to Tatham, that it had all been done away by the purchase; Waite accordingly burned the lease. The plaintiffs did not know of the sale to Lewis until October 1863, when they were informed of it by Wilson. H. B. Tatham tendered to Lewis $5000, his share of the purchase-money; Lewis said he had bought on his own account and had sold one-half of it. G. N. Tatham went to Huntingdon and saw Wilson, who told him that Mrs. Waite had refused to sign the lease, but not that it had been destroyed. The next day Waite informed G. N. Tatham of the transaction, and told him that he supposed he had been selling to the plaintiffs, Taylor and Lewis, as being represented by Wilson. Lewis and Taylor afterwards sold to C. & H. Borie for $100,000.

The prayer was:—

1. That the purchase by Lewis be decreed to have been made in trust as to one-half thereof, for the benefit of plaintiffs.

2. That Lewis may be decreed to account.

3. That he be decreed to pay over one-half the net profits.

4. That Lewis and Wilson may be decreed jointly and severally to pay over one-half part of the profits realized from the Waite farm.

5. That defendant Wilson may be decreed to pay and make

good to them the losses suffered in consequence of his fraudulent conduct in the premises.

There was no prayer as against Taylor's administrators.

Lewis in his answer stated at large his connection with the transactions detailed in the bill. He denied the statements as to the influence of H. B. Tatham on him to purchase the property; denied that he ever agreed with any of the plaintiffs to visit Sinking Valley, averring that it was a matter between Taylor and himself; he denied that there was any arrangement that the purchase of the Waite farm was to be on joint account; denied that he knew that Wilson was the professional adviser of the plaintiffs, and, upon belief, denied that Wilson was their professional adviser; he averred that after visiting the Valley he declined to purchase Taylor's interest in the leases, and that afterwards on Wilson's advice he purchased the Waite farm, which was conveyed to him, August 15th 1863, having theretofore informed Taylor that he had determined to make the purchase, and that Taylor "should not be a loser by it."

Andrew M. Jones, one of the administrators of Taylor, answered, partly on knowledge and partly on information, that Taylor having made the discovery as to the zinc, but having no capital to invest, agreed with H. B. Tatham, that he, Tatham, should furnish capital for developing the deposits as an equivalent for Taylor's scientific knowledge; that Tatham having obtained the information, refused to allow Taylor an interest unless he would pay half the purchase-money of certain land and leases which Tatham had obtained; that H. B. Tatham and Taylor visited the Valley in 1860, and were accompanied by Wilson as a friend (not as attorney) to introduce them to the residents of the Valley, and that several mining rights were purchased in the names of Tatham and Taylor; the answer averred that H. B. Tatham first suggested to Taylor to sell out his interest; the answer denied that the visit with G. N. Tatham had any reference to the Waite farm; and that Taylor had any knowledge that Tatham had leased the Waite farm; that Taylor became acquainted with Lewis in 1863 with reference to a sale of his interest; the answer denied that Lewis was first informed by Tatham of the zinc deposit, and that he, Lewis, purchased Taylor's interest in the leases, and averred that he purchased the land, August 15th 1863, agreeing that Taylor should have one-half the profits, and upon that basis subsequently settled with Taylor's representatives.

Wilson, amongst other things, denied that he acted as counsel for G. N. Tatham, but went with him to visit the Valley through regard for Taylor; that Waite refused to lease on account of some stipulations in the leases, and Wilson asked him to sell. Wilson knew nothing as to G. N. Tatham obtaining a lease from Waite, and never undertook to procure leases for any of the plaintiffs; he did not know that Lewis intended to purchase Taylor's interest;

[Tatham *v.* Lewis.]

he proposed to Lewis in the presence of Taylor to purchase Waite's farm, saying that it was worth $40 per acre for farming purposes. After some conversation Lewis agreed to buy the farm, Wilson having no knowledge of the lease to Tatham. Wilson was to have no interest in the farm, and nothing was said about compensation to him, or that Taylor was to have an interest in the farm. He denied that he told Waite that he was acting for any of the complainants or for Taylor; he denied that he had any authority to act for them or for Taylor. On the 5th of August 1863, after some negotiation as attorney for Lewis, he closed an agreement for the purchase of the Waite farm for $10,000, and on the 15th a deed was executed to Lewis. Wilson denied that he directed Waite to destroy the lease to Tatham; that he made any representation to Waite that the purchase was for any other person than Lewis.

A replication was filed, and C. H. T. Collis, Esq., appointed examiner. Much testimony, written and oral, was taken by him. By the testimony it appeared that in March and May 1864 the plaintiffs sold to C. and H. Borie and the Keystone Zinc Company for $50,000 all their interest in the mining leases which they had in Sinking Valley, including the Waite lease. Mr. Collis was afterwards appointed master.

He reported that the relation between H. B. Tatham and Wilson was of the most confidential character in reference to obtaining leases in Sinking Valley, and Wilson's understanding was that he was to be compensated; that H. B. Tatham depended almost entirely on the services of Wilson, who devoted a large portion of his time to the business in preparing and procuring leases; no fee had been received by him nor had he presented a bill for services, but he could sustain an action for professional services; the master found as a fact, that Wilson " was present with the plaintiffs, and interesting himself on their behalf to secure a lease of the Waite farm in June 1863. He found that on the 18th of the same month, G. N. Tatham obtained a mining lease from Waite, and left it with him to obtain the acknowledgment of his wife; and that Wilson in the same month knew that G. N. Tatham was in negotiation with Waite for mining privileges. He further found that when Taylor visited the Valley in July 1863, he did not know of the lease from Waite to G. N. Tatham; that the allegation of the plaintiff that the entire operations in the Valley were agreed to be on the joint account of Taylor, Lewis and H. B. Tatham is, not sustained by the evidence. He found that on the 1st of August 1863 Wilson commenced a negotiation on behalf of Lewis with Waite for the purchase of his farm, which was consummated on the 15th by a conveyance of the farm to Lewis for $10,000; that Wilson then advised Waite to destroy the lease, as being of no use to anybody after the conveyance, and in consequence the lease was afterwards destroyed. He found specifically

[Tatham *v.* Lewis.]

as a fact, that at the time when Wilson negotiated for the sale of the Waite farm to Lewis, he knew of the existence of the lease executed by Waite to G. N. Tatham, but that he did not inform Lewis of it. The master further found that Lewis had no actual notice of the lease to G. N. Tatham; nor was he chargeable with constructive notice by reason of Wilson being his attorney, and having knowledge of the lease. He further reported that if Lewis had purchased with such notice, the remedy of Tatham would have been to enforce the lease against the fee, but that after having sold the Waite lease to Borie for a valuable consideration, it was too late to follow it as against Lewis's profit in the sale of the farm, having failed to show they were jointly interested in the profits. He therefore reported that there could be no decree against Taylor's representatives or Lewis.

As to Wilson he reported:—

"It is ascertained to my entire satisfaction that Wilson knew of the existence of the incomplete lease to George N. Tatham, and I am of opinion it was clearly his duty to have informed Mr. Lewis of its existence, and to have informed Mr. Tatham that Lewis intended to purchase. But there is no evidence in the case which would justify me in reporting that under any circumstances the Tathams would have purchased the farm, and it is clearly established that Mrs. Waite would not sign the lease. What was there, then, of which Wilson's conduct deprived the Tathams? Simply of the benefit they might derive from the existence of a partly-executed undelivered mining lease, which of itself was of very questionable value, but for which, together with seven other leases, they were paid by the Messrs. Borie fifty thousand dollars. I cannot, therefore, report a decree as against Wilson under this form of proceeding."

The master's report was very elaborate, stating the facts very much at large, and examining and giving his opinion very fully on the questions of law. The pleadings and what is above given of the testimony and the report, in connection with the facts as condensed in Judge Sharswood's opinion, will sufficiently present the case.

The master recommended that the bill be dismissed; but as it appeared to him that plaintiffs were warranted in prosecuting an investigation, that the decree should be without costs.

The plaintiffs filed exceptions to the master's findings.

The defendant also filed exceptions, especially that he did not find that the plaintiffs should be charged with the costs.

The court at Nisi Prius dismissed all the exceptions, and made a decree in accordance with the master's report. The plaintiffs appealed to the court in banc, assigning the decree for error.

*P. P. Morris* and *J. A. Clay* (with whom was *W. H. Rawle*), for Tathams.

[Tatham *v.* Lewis.]

*G. W. Biddle* (with whom was *H. Wharton*), for Lewis; *Porter* for Wilson.

*C. S. Pancoast,* for Taylor's representatives.

The opinion of the court was delivered, March 3d 1870, by

SHARSWOOD, J.—A careful examination of the evidence has satisfied us that the master is fully sustained in the conclusions at which he arrived. As the questions involved were mainly questions of fact, in regard to which the report has the effect of a verdict, it leaves very little to be said in affirming the decree below.

The facts as now ascertained may be briefly stated. The complainants were jointly interested with Taylor in the project of procuring mining leases in Sinking Valley. They engaged the services of the defendant, Wilson, as their attorney. Several leases were obtained by his assistance and intervention. As these leases were for a long term of years, by his advice the wives of the lessors were in all instances required to join with a separate acknowledgment in order to bar dower. Henry Waite, the owner of a farm, had executed a lease to George N. Tatham, one of the complainants, but it was in the names of himself and wife, and it was left in his possession to be executed and acknowledged by her. Wilson had nothing to do with this lease, but George N. Tatham informed him of what had been done. Taylor was entirely ignorant of it. He proposed to sell out his interest to Lewis, and accompanied him with Wilson on a tour of exploration through the Valley. In the course of it the Waite farm was visited. Neither Taylor nor Lewis were informed by Wilson of the existence of the lease. Lewis declined to buy out Taylor's interest, but authorized Wilson to purchase the Waite farm. There were no negotiations by the Tathams pending with that view; they had distinctly declined to take it at the price at which it had been offered. Wilson did purchase the farm for Lewis, and by his advice the lease was subsequently destroyed as of no value. After all these transactions were fully known to the complainants, they sold out for a large sum of money all their interest in the leases in Blair county, including specially the alleged lease of the Waite farm. The master has reported "that the evidence in the case does not support the allegation that it was understood that the result of Lewis's operations in the Valley should be for the joint interest of himself and plaintiffs, or of himself, plaintiffs and Taylor."

Assuming, as we must, this to be so, there is no principle of equity upon which Lewis can be made to account to the complainants for any share of the profits subsequently realized by him from the sale of the farm. The lease was clearly not binding

[Tatham *v.* Lewis.]

upon the lessee.   He could not have been compelled to accept it without execution by the wife; neither could the lessor have been compelled to deliver it.   It was evidently a condition of the bargain that the wife should agree.   It must be mutually binding on both parties or neither.   The lessor had a perfect right, when his wife refused, to cancel and destroy the instrument.   How, then, can notice, actual or constructive, of such a paper affect Lewis with any equity, if there existed at the time of the purchase of the farm no confidential relation between him and the plaintiffs ?

The existence of such a confidential relation is evidently the turning-point of the whole controversy.   If the lease had been a valid subsisting lease, complete by delivery without the joinder of the wife, the destruction of it by the lessor could not destroy the estate or term.   The plaintiffs could have compelled the execution and delivery of another by proceeding against the lessor, and if Lewis was affected with constructive notice by the knowledge of Wilson, his attorney, it could have been established as against him, and he could have been obliged to confirm it.   His remedy would then have been against Wilson, his attorney, for not having communicated to him the knowledge he possessed of it.   It is not easy to see how Wilson incurred any responsibility to the Tathams for not having given actual notice to Lewis, if he was equally well affected by constructive notice.   The extent of his liability would have been the costs of a proceeding to establish the lease as an encumbrance.   But the complainants did not take this course to enforce their rights, if they had any.   Instead of this, they voluntarily parted with all their interest in their leases in Blair county, for a valuable consideration, to Messrs. C. and H. Borie, including specially this very lease of the Waite farm.

Had these gentlemen not been at the same time purchasers from Lewis, and had they not been fully cognisant of the facts, and stipulated for a transfer of the lease with the object, as Mr. C. L. Borie states in his testimony, that in addition to his desire to buy out their entire interest, and to get rid of any competition that might arise, " to get rid of any claim they might pretend to have against this farm, as also of any lawsuit or quarrel which they might have with George Lewis," they would have been at the commencement of these proceedings the only parties injured, having a right of redress against Lewis or Wilson, or both.   In equity they stand in the shoes of the plaintiffs, so far as regards any claims or demands based upon the transaction of this lease. It is plain, then, that the whole matter of this alleged lease of the Waite farm is as irrelevant to the true merits of the controversy, as was the question of the Earp lease of the Ueberoth farm in Lehigh county, in regard to which so much testimony was given before the examiner, with what object it is difficult to comprehend.   Had the plaintiffs suffered any damage in not ob-

[Tatham *v.* Lewis.]

taining the full value of the Waite lease on the transfer of it, in consequence of the negligence or misconduct of Wilson, as their attorney, upon which point, however, no evidence was given, no bill in equity could be maintained, as a full and adequate remedy existed at law in an action against him to recover such damages.

We think, however, from the peculiar circumstances of the case, that there was some warrant for the bill, and we agree, therefore, with the master, that there should be no costs.

Decree affirmed, each party to pay their own costs.